Argued and submitted May 20, 2014, conviction on Count 1 reversed and remanded, otherwise affirmed March 25, state's petition for review allowed July 9 (357 Or 550), Rice's petition for review denied September 11, 2015 (357 Or 743)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES HARVEY RICE,
*Defendant-Appellant.*

Lincoln County Circuit Court
104651; A151640

346 P3d 631

Jesse Wm. Barton argued the cause and filed the briefs for appellant.

Joanna L. Jenkins, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, and interfering with a peace officer, ORS 162.247.[1] He assigns error to the trial court's denial of his motion to suppress evidence, arguing that police violated his right against unreasonable search and seizure under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, when police forcibly entered his home to seize him in the course of a DUII investigation. He also assigns error to the trial court's denial of his motion for judgment of acquittal (MJOA), arguing that his actions were passive resistance, and, therefore, do not constitute the crime of interfering with a peace officer. The state responds that police did not violate defendant's right under Article I, section 9, because the risk of losing evidence of defendant's blood-alcohol level created exigent circumstances that excused the warrant requirement of Article I, section 9. The state also contends that a rational factfinder could find that defendant's actions were not passive resistance. We hold that the trial court erred in denying defendant's motion to suppress because the officers violated defendant's rights under Article I, section 9, and that the evidence was sufficient to support a finding that defendant was not engaged in passive resistance. Accordingly, we reverse and remand defendant's conviction for DUII, and otherwise affirm.

The following facts are undisputed. Two off-duty deputy sheriffs observed a station wagon driving 25 miles per hour on a road with a posted speed of 35 miles per hour. They saw the station wagon cross the center line multiple times and noticed that it increased its speed to 55 miles per hour on a bridge and then slow back down to 25 miles per hour after crossing. One deputy noted that the driver was an older tired-looking man with droopy eyes and mouth. The deputies called the authorities to report the driver as a possible drunk driver, gave a description of the station wagon and the driver, and relayed the station wagon's license plate number. The station wagon then ran a red light, and the

---

[1] Defendant was also charged with escape in the third degree, ORS 162.145, and reckless driving, ORS 811.140. However, he was not convicted of those crimes.

deputy sheriffs lost track of it. Later, when he was traveling alone, one of the off-duty sheriffs spotted the same driver and station wagon, only now traveling with a woman in the passenger seat. He noticed the station wagon weave "a little bit" and again called to report the driver. That call took place around 11:01 a.m.

Between 11:15 a.m. and 11:20 a.m., Deputy Sheriff Sites, responding to the off-duty deputies' calls, arrived at the home of the registered owner of the station wagon. Sites knocked on the door, peered into the window, and saw defendant and a woman in the house. Defendant, who matched the description of the driver, opened the interior door, but left a storm door locked and closed. Sites noticed that defendant's eyes were watery and glassy, he smelled of alcohol, his facial muscles were slack, he appeared lethargic, and, when he spoke, his speech was slurred. Defendant admitted that he had been driving the station wagon. Sites asked defendant to step outside to perform field sobriety tests, and defendant replied, "I don't see why I would do that." Sites then told defendant that he was being detained on suspicion of DUII and instructed him to open the storm door. Defendant replied, "Go fuck yourself," and closed the interior door.

Sites began to knock on the door again and yelled for defendant to open the door. Defendant opened the interior door, again leaving the storm door locked and closed, and said, "Now you're getting annoying." Sites told defendant that he was under arrest and ordered him to open the storm door. Defendant told Sites to "fuck off." Sites put his hand through an open window in the locked and closed storm door—placing his hand against the interior door—and told defendant not to close the door. Defendant replied, "You'd better get more cops here," before closing the door.

Sites then immediately attempted to forcibly open the locked storm door, damaging the handle. Failing to open the door, Sites called for assistance, and continued to peer into defendant's home where he saw defendant sit down at his dining room table. Sites continued to order defendant to open the door, telling him that, if he didn't open the door, "I'd be forcing entry into his residence." Defendant closed his blinds. Concerned that defendant would attempt to leave,

Sites walked to the back of the house and saw the station wagon in the home's detached garage.

Sergeant Shanks and Trooper Tucker arrived at 11:34 a.m., and Sites briefed them on the situation. The officers believed that they had probable cause and exigent circumstances, permitting them to enter the residence without a warrant. At about 11:41 a.m., with one officer stationed at the rear of the house, Sites reached through the open window of the storm door and unlatched it, then he kicked in defendant's interior door, breaking the door frame. Defendant continued to sit at his dining room table.

Those events transpired on a Sunday. Sites testified that he had not considered attempting to obtain a telephonic warrant to enter the home and that the officers did not discuss getting a warrant because they believed that they had probable cause and exigent circumstances. Sites also testified that the last time he had forced entry into a residence, it had involved detectives and had taken several hours to obtain a warrant. Given that the entry had occurred on a Sunday, Sites believed—in retrospect—that it may have been difficult to reach a judge to issue a warrant.

Following a hearing on defendant's motion to suppress evidence obtained after the forcible entry, the trial court found that

> "[the a]vailability of a judge to review a search warrant on a Sunday at 11 a.m. is speculative; it is far easier to contact a judge at 2 a.m. because they are routinely home at that time. It can take a matter of mere minutes to get a judge on the line for a telephonic warrant if things go right."

The court also found that, on a past occasion when Sites obtained a warrant to search a person's residence, the process had taken several hours, and that Sites was "aware of [the] process for a telephonic warrant" and was "aware that a telephonic warrant [of the required type] takes several hours." The court, citing *State v. Machuca*, 347 Or 644, 227 P3d 729 (2010), denied defendant's motion to suppress, reasoning that

> "[i]t doesn't matter how quickly Sites might have been able to get a telephonic warrant; he did not have to waste the time doing that. That's the whole point behind the doctrine of exigent circumstances."

At trial, defendant testified that, immediately after reaching home, he drank nearly two coffee mugs full of vodka because he was out of his pain medication. After defendant's first trial, a jury returned a guilty verdict on the charge of interfering with a peace officer, but could not reach a verdict on the DUII and other charges, and the court declared a mistrial on those remaining charges. After his second trial, defendant was convicted of DUII.

We begin with defendant's argument that the trial court erred when it denied his motion to suppress. We review a trial court's denial of a motion to suppress for legal error. *State v. Woodall*, 181 Or App 213, 217, 45 P3d 484 (2002). Defendant argues that the officers violated his right against unreasonable search and seizure under Article I, section 9, and under the Fourth Amendment. The state contends that defendant's argument under the Fourth Amendment is unpreserved; however, because defendant's state constitutional claim is dispositive, we do not reach defendant's argument under the federal constitution. *See State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996) ("This court considers state constitutional claims before considering federal constitutional claims.").

Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" "Warrantless entries and searches of premises are *per se* unreasonable unless they fall within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). One such exception applies when police have probable cause to arrest a suspect and there are "exigent circumstances." *State v. Kruse*, 220 Or App 38, 42, 184 P3d 1182 (2008). "An exigent circumstance is a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). "Article I, section 9, typically requires a degree of justification for a seizure of a person that correlates with the extent to which police conduct intrudes on that citizen's liberty." *State v. Fair*, 353 Or 588, 603, 302 P3d 417 (2013). "An ultimate

objective of the [Oregon state] constitutional protections * * * against unreasonable searches and seizures is to protect the individual in the sanctity of his or her home." *Id.* at 600 (internal quotation marks and brackets omitted). "The state has the burden of proving that circumstances existing at the time were sufficient to satisfy any exception to the warrant requirement." *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011).

Regarding his motion to suppress, defendant argues that the trial court erroneously relied on *Machuca*, 347 Or 644, for the proposition that the state did not have to show that it could not have obtained a warrant without sacrificing evidence in order to prove that exigent circumstances existed here, relieving the officers of the warrant requirement. Defendant argues, among other things, that *Machuca* does not apply to this case because, unlike *Machuca*—where a DUII suspect was in custody in an emergency room when police ordered a warrantless blood draw to assess the suspect's blood alcohol level—here, the officers forcibly entered defendant's home. The state responds that the court's reasoning in *Machuca* applies equally to the context of an officer's forcible entry into a suspect's home as to a blood draw taken from a suspect in an emergency room and, therefore, the state was not required to show that it could not have obtained a warrant without sacrificing evidence. Moreover, the state argues that any delay long enough to obtain a warrant might allow a defendant to either consume alcohol in his home—hidden from police view—or to claim that he had done so, and thus "tamper" with the evidence—namely, the condition of his own body.

We reject the state's argument for reasons set forth in *State v. Sullivan*, 265 Or App 62, 333 P3d 1201 (2014). The facts here are materially indistinguishable from those in *Sullivan*. Accordingly, the trial court erred when it denied defendant's motion to suppress. The trial court found that the "[a]vailability of a judge to review a search warrant on a Sunday at 11 a.m. is speculative; it is far easier to contact a judge at 2 a.m. because they are routinely home at that time. It can take a matter of mere minutes to get a judge on the line for a telephonic warrant if things go right." Yet, to justify a warrantless entry into a residence under the doctrine

of exigent circumstances, the state has the burden to prove that the time it would have taken to obtain a warrant would have sacrificed the evidence. *Id.* at 80-81; *see also State v. Ritz*, 270 Or App 88, 98-99, 347 P3d 1052 (2015) (concluding that, after showing how long it would have taken to obtain a warrant, the state may prove that an exigency exists by showing that the circumstances at the time gave rise to a reasonable concern that, if police waited for a search warrant, the suspect's blood would lose all evidentiary value). Based on the trial court's findings, the state did not meet that burden.

Turning to defendant's conviction for interfering with a peace officer, defendant argues that he did not violate ORS 162.247[2] because (1) the officer's order that he not close the door was unlawful; (2) defendant was already seized at the point at which the officer issued the order and, therefore, may have committed the crime of resisting arrest, ORS 162.315, but not interfering with a peace officer; and (3) defendant's actions were passive resistance. We agree with the state that, at trial, defendant only argued that the court should grant an MJOA because closing the door was passive resistance, and consequently, only that argument is preserved.[3] *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22

___

[2] ORS 162.247 provides:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181.610:

"* * * * *

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer.

"* * * * *

"(3) This section does not apply in situations in which the person is engaging in:

"(a) Activity that would constitute resisting arrest under ORS 162.315; or

"(b) Passive resistance."

[3] Defendant did not argue at trial that the officer's order was unlawful. To be sure, during his motion to suppress, he argued that the officer's entry was unlawful; however, the issue of the officer's subsequent entry is distinct from whether the prior order was lawful. *See, e.g., State v. Neill*, 216 Or App 499, 508, 173 P3d 1262 (2007) (concluding that a defendant may be convicted of interfering with a peace officer for disobeying an order issued after police entered the defendant's home regardless of whether the entry was lawful).

(2000) (explaining that, to preserve an issue, a party must provide the trial court with sufficient explanation to identify the alleged error).

We review the denial of an MJOA to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Defendant argues that closing the door on the officer is passive resistance because it is a noncooperative and nonviolent reaction to government overreach. However, after the court ruled on defendant's MJOA, we held that passive resistance under ORS 162.247(3)(b) requires that a "defendant * * * engag[e] in specific acts or techniques that are commonly associated with governmental protest or civil disobedience." *State v. Patnesky*, 265 Or App 356, 366, 335 P3d 331 (2014). A rational trier of fact could have found that defendant's action—closing his door on an officer investigating a crime—was not a specific act or technique of noncooperation "commonly associated with governmental protestor civil disobedience." *Id.* Therefore, the court did not err when it denied defendant's MJOA.

In sum, to demonstrate that exigent circumstances exist when police seek to forcibly enter a defendant's residence, the state has the burden to prove that the time it would take to obtain a warrant would have sacrificed the evidence sought. *Sullivan*, 265 Or App at 80-81. Here, the state did not meet that burden and the court erred in denying his motion to suppress. However, the court did not err when it denied defendant's MJOA on the charge of interfering with a peace officer because there was evidence sufficient to support a finding that closing the door on an officer was not passive resistance under ORS 162.247(3)(b).

Conviction on Count 1 reversed and remanded; otherwise affirmed.