Argued and submitted January 11, 2016, affirmed June 14, petition for review denied October 5, 2017 (362 Or 39)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ERIN A. GERETY,
true name Erin Ashley Gerety,
*Defendant-Appellant.*

Washington County Circuit Court
D133957T; A157516

399 P3d 1049

Ryan Scott argued the cause and filed the brief for appellant.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

## EGAN, J.

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. She assigns error to the trial court's denial of her motion to suppress evidence, arguing that the trial court erred when it found that exigent circumstances justified the warrantless entry into defendant's home, and the state failed to offer credible evidence regarding how long it would take to obtain a search warrant. The state responds that the trial court correctly denied defendant's motion to suppress because it "presented credible evidence to establish that there were exigent circumstances justifying the warrantless entry into defendant's apartment." We conclude that the trial court did not err in denying defendant's motion to suppress. Accordingly, we affirm.

The following facts are undisputed. At approximately 11:17 p.m., Officer Hicks of the Tigard Police Department received a dispatch report of a reckless and possibly drunk driver. Dispatch provided a description of the car and license plate number. Hicks drove to the address where the car was registered and found the car that matched the description and license plate described by dispatch. Hicks noticed that defendant's car was parked over the parking space line and occupied the space to the right of it. At approximately 11:22 p.m., he knocked on the door of the address identified for the registered owner of the car, and defendant opened the door. Hicks noticed that defendant appeared intoxicated—she had bloodshot eyes, was hanging on the door for balance, slurred her words, and smelled heavily of alcohol. Hicks asked defendant where she had been and she responded that she had driven from her brother's house. Defendant also said that she had not consumed any alcohol after arriving home.

At that point, Hicks believed that he had probable cause to arrest defendant for DUII. Hicks was concerned with the potential loss of evidence through alcohol dissipation and possible tampering of evidence if defendant were to drink inside her house. Defendant attempted to close the door, and Hicks put his foot in the door and told her that she was not free to leave. Defendant reopened the door and

cooperated with Hicks. Hicks read defendant her *Miranda* warnings and explained that another officer was going to take over the investigation.

Officer Davis of the Tigard Police Department arrived and observed that defendant exhibited signs of intoxication. Davis spoke to defendant about her drinking and asked her to perform field sobriety tests. Defendant completed the field sobriety tests, and Davis took her to the police station. Davis began the breath-test procedure, including reading defendant the statement of "implied consent rights." Defendant would not consent to a breath test, and Davis entered a refusal. Defendant was charged with DUII.

Before trial, defendant moved to suppress the evidence of her arrest and all evidence obtained thereafter, arguing that she was stopped and arrested within her own home without an exception to the warrant requirement in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Specifically, defendant contended that, "when dealing with the warrantless entry into the home, the State must put on a showing of its attempts to get a warrant and how those attempts either did not work or would not have worked within a reasonable time."

At the hearing on the motion to suppress, Hicks testified that it would usually take about "four to five hours" to get a search warrant. He explained that he had prepared search warrants before and, in his experience, to get a search warrant, the officer would draft the warrant and email the draft to an on-call prosecutor, the prosecutor might edit the warrant, and, finally, a judge would approve and sign the warrant. Hicks also explained that, during his DUII training, he had learned that alcohol generally dissipates from a person's system at "about a drink an hour," but that that rate varies depending on several other factors. Hicks and Davis testified that the Tigard Police Department did not use telephonic warrants because Washington County did not have that procedure in place. Davis testified that telephonic warrants would make the warrant procedure "faster" but "[y]ou still have to get a hold of the district attorney's office and/or

the judge specifically to have it approved, and then you have to actually execute the warrant, which is still going to take time."

Defendant asked to supplement the record with how long it would take an officer to obtain a telephonic warrant. The trial court denied defendant's request to supplement the record, stating that the length of time it would take to obtain a telephonic warrant is "not going to be an issue * * * as far as deciding your motions because we don't do telephonic warrants * * * in Washington County."

The state argued that the trial court should deny defendant's motion to suppress because the officers had probable cause to arrest defendant for DUII and that there were exigent circumstances to justify the warrantless entry into defendant's residence. The state explained that there were two grounds for exigent circumstances: (1) "potential dissipation of alcohol evidence" and (2) "potential destruction of evidence" if defendant consumed alcohol inside her residence. Defendant responded:

> "So it's my position that the three to five hours, although that's what [the officers] testified to, is simply not reasonable because if it is, what we get to is a situation where the state by and through the combination of its agents of the court, the DAs and the police all have policies and procedures enacted in addition to state law which make it take so long to get a warrant that essentially every DUII is an exception to the warrant requirement.
>
> "And that's exactly what the U.S. Supreme Court rejected in its recent decision of—I think it was *Missouri v. McNe[e]ly.*"

The trial court denied defendant's motion to suppress based on the exigent circumstances that were involved. The trial court explained:

> "I think [defendant is] advocating the idea that somehow Washington County should start doing telephonic warrants. You know, I have no idea where the judges are on that. The DA's office I think is primarily in the driver's seat on something like that. And that's their option, whether they want to do that or not. The statute does not require telephonic warrants."

Subsequently, defendant was convicted of DUII in a stipulated facts trial.

On appeal, the parties reiterate their arguments from below. Defendant contends that the warrantless entry into defendant's home was not justified by exigent circumstances. The issue, according to defendant, "is whether the state has met its burden to put on credible evidence of the time it would take to obtain a warrant, when it [did] not put on evidence of how long it would take to obtain a telephonic warrant." The state counters that it "presented credible evidence to establish that there were exigent circumstances justifying the warrantless entry into defendant's [home]" under both Article I, section 9, and the Fourth Amendment. We agree with the state for the reasons that follow.

When reviewing a denial of a motion to suppress, we are bound by the facts found by the trial court that are supported by evidence in the record. *State v. Marshall*, 254 Or App 419, 421, 295 P3d 128 (2013). Whether those facts describe circumstances that justify a warrantless search or seizure is a question of law. *State v. Dahl*, 323 Or 199, 205, 915 P2d 979 (1996). "Because of the peculiar nature of the DUII offense, defendant's personal condition and, therefore, his person are evidence. In some circumstances, the need to secure that evidence of the crime of DUII—defendant's body—might justify a warrantless entry of a home, *if the state proves that the arresting officers could not have obtained a warrant before the alcohol in the suspect's body dissipated.*" *State v. Roberts*, 75 Or App 292, 296, 706 P2d 564 (1985) (emphasis in original).

Defendant contends that the warrantless entry into defendant's home was not justified by exigent circumstances because, under *State v. Sullivan*, 265 Or App 62, 333 P3d 1201 (2014), the state failed to offer credible evidence on how long it would take to obtain a warrant. In *Sullivan*, the defendant was charged with DUII. At the hearing on the defendant's motion to suppress evidence derived from a warrantless entry into the defendant's home, the officer testified that he could not obtain a warrant by telephone because telephonic warrants do not exist in Washington County and no evidence was presented as to whether a warrant could have

been obtained by traditional in-person methods. 265 Or App at 65. The trial court denied the defendant's motion to suppress; concluding that, "[w]hen a warrantless search is challenged, * * * the State must prove that a warrant could not be obtained in time to prevent the loss of evidence of intoxication." *Id.* (omission in original). We reversed the decision of the trial court, concluding that, to justify a warrantless home entry, we require "some showing [by the state] as to how long it would have taken to obtain a warrant under the circumstances" so as to determine "to what degree—if any at all—that the potential evidence sought would have been 'sacrificed.'" *Id.* at 80.

Defendant concedes that, "[i]n this case, the state has offered more evidence than it offered in *Sullivan*" because Hicks testified that it would take about four to five hours to obtain a warrant. However, defendant argues that the state put on no evidence of how long it would have taken to obtain a telephonic warrant. The state responds that "no authority * * * requires it to put on evidence of how quickly a non-existent telephonic warrant procedure would work in order to prove that exigent circumstances justified a warrantless police action." We agree with the state.

We are not aware of any case law requiring the state to prove how long a *telephonic* warrant would have taken to establish exigent circumstances to justify a warrantless entry into defendant's home when telephonic warrants are not available. *See State v. Kruse*, 220 Or App 38, 43, 184 P3d 1182 (2008) (concluding that the state failed to prove that exigent circumstances existed, where the state's only evidence concerning the time necessary to obtain a warrant was that it would have been "very lengthy" and the officer did not know the "exact time"); *Roberts*, 75 Or App at 297 (concluding that the state failed to carry its burden to prove exigency because the officers did not seek a warrant and "offered no credible evidence of the length of time necessary to obtain a warrant").

Here, the state presented evidence that it would have taken the officer about four to five hours to obtain a warrant. Hicks testified that he had obtained search warrants before, and he articulated the steps that would have

to be taken to obtain a warrant. That evidence was non-speculative proof of the time it would have taken to obtain a warrant in this case. *See State v. Ritz,* 270 Or App 88, 99-101, 347 P3d 1052, *rev allowed,* 357 Or 550 (2015) (evidence that a telephonic warrant could take at least 45 minutes, and 90 minutes to prepare the warrant application, was nonspeculative and constituted sufficient proof of exigent circumstances to excuse the need to obtain a warrant under the state and federal constitutions); *see also State v. Rice,* 270 Or App 50, 55-56, 346 P3d 631, *rev den,* 357 Or 743 (2015) (speculation about the availability of a judge to review a search warrant on a Sunday at 11:00 a.m. so that warrant could be obtained failed to prove exigency for warrantless home entry).

The real basis of defendant's argument is that Washington County, by not establishing procedures to obtain telephonic warrants, is creating the exigency—not the circumstances of the case. We agree that it is troubling that the county has not adopted methods to expeditiously obtain warrants, given all the advances in technology available to it. However, we are not aware of any authority that requires the county to use telephonic warrants. We are confined to deciding this case based on the evidence regarding or about how long it actually takes to obtain a warrant given the procedures available to the officers. Thus, we conclude that the trial court correctly denied defendant's motion to suppress because the state met its burden to put on credible evidence regarding the time it would take to obtain a warrant.

Next, defendant argues that, under *Missouri v. McNeely,* 596 US 141, 133 S Ct 1552, 185 L Ed 2d 696 (2013), the state violated defendant's rights under the Fourth Amendment by entering defendant's home without first obtaining a warrant. The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."

In *McNeely,* the Court held that, "in drunk-driving investigations, the natural dissipation of alcohol in the

bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at 1568. Instead, the exigency "must be determined case by case based on the totality of circumstances." *Id.* at 1556. The Court did not specify all of the factors that can be taken into account to determine whether an exigency exists:

> "Because this case was argued on the broad proposition that drunk-driving cases present a *per se* exigency, the arguments and the record do not provide the Court with an analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant. It suffices to say that the metabolization of alcohol in the bloodstream and the ensuing loss of evidence are among the factors that must be considered in deciding whether a warrant is required."

*Id.* at 1568.

Defendant points out that, in *McNeely*, the Court acknowledged that "adopting the State's *per se* approach would improperly ignore the current and future technological developments in warrant procedures, and might well diminish the incentive for jurisdictions to pursue progressive approaches to warrant acquisition that preserve the protections afforded by the warrant while meeting the legitimate interests of law enforcement." *Id.* at 1563 (internal quotation marks omitted). The court noted that "technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency." *Id.* at 1562. Yet, the Court also concluded that "[o]ther factors present in an ordinary traffic stop, such as *the procedures in place for obtaining a warrant* or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search." *Id.* at 1568 (emphasis added).

Although the Court recognized in *McNeely* that technology-based developments should help to speed the warrant application process and are relevant to an assessment

of exigency, it does not require law enforcement to use telephonic warrants. Indeed, *"the procedures in place for obtaining a warrant"* is a factor that may be considered to decide whether an exigency that permits a warrantless search. *McNeely*, 133 S Ct at 1568 (emphasis added). Here, there were no procedures in place in Washington County to obtain a telephonic warrant. Thus, we conclude, for the purposes of this case, that the state sufficiently proved an exigent circumstance that excused the need to obtain a warrant under the Fourth Amendment. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.